**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | Case No. 2:18-cr-264-RMG |
| Respondent, | ) | |
| v. | ) | **ORDER** |
| Brian Dale Lee, | ) | |
| Petitioner. | ) | |

This matter comes before the Court on Petitioner's *pro se* motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. (Dkt. No. 377). Respondent has filed a memorandum in response and has moved to dismiss or, in the alternative, for summary judgment. (Dkt. No. 384). Petitioner has filed a reply. (Dkt. No. 390). Since the Court will consider the record in this matter in addressing the Respondent's motion, the motion will be reviewed under a summary judgment standard.

**I.    Legal Standards**

    **A.    28 U.S.C. § 2255**

To obtain relief under 28 U.S.C. § 2255, a petitioner must prove by a preponderance of the evidence that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).

    **B.    Ineffective Assistance of Counsel**

Criminal defendants have a Sixth Amendment right to assistance of counsel. *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010). To prevail on a claim of ineffective assistance of counsel, a

1

petitioner must show (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that a reasonable probability exists that, but for the counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

To establish deficient performance, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2011). The district court must apply a "'strong presumption' that counsel's representation is within the 'wide range' of reasonable professional assistance." *Id*. (*quoting Strickland*, 466 U.S. at 689). Courts generally show a marked reluctance to accept counsel's "tactical decision" as evidence of ineffective assistance. *Hutchins v. Garrison*, 724 F.2d 1425, 1436 (4th Cir. 1983). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Strickland*, 466 U.S. at 690. "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one." *Harrington*, 562 U.S. at 105. The question is whether counsel's representation amounted to "unreasonableness under prevailing professional norms" rather than whether it deviated from best practice or the common custom. *Strickland*, 466 U.S. at 689.

With respect to prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 693. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding"; rather, counsel's errors must be "so serious as to deprive

2

the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla*, 559 U.S. at 371.

### C.    Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Facts are "material" when they might affect the outcome of the case, and a "genuine issue" exists when the evidence would allow a reasonable factfinder to return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

### D.    *Pro Se* Petition

*Pro se* complaints are held to less stringent standards that submissions from attorneys and are afforded liberal construction.  *Erickson v. Parfus*, 551 U.S. 89, 94 (2007).

## II.    Factual Background

Petitioner pled guilty to Conspiracy to Possess with Intent to Distribute and Distribution of Methamphetamine and Heroin on October 23, 2018, pursuant to a plea agreement. (Dkt. Nos. 116, 117).  Due to Petitioner's extensive criminal history (which included multiple prior drug offenses) and the Government's filing for a sentencing enhancement under 21 U.S.C. § 851, he then faced a mandatory minimum sentence of life, unless he was able to earn a departure for substantial assistance under Sentencing Guideline 5K1.1.  The First Step Act was adopted on December 21, 2018, which had a highly favorable impact on Defendant's sentencing status.  Under the previous statutory provision, Petitioner had at least two prior qualifying drug convictions, which mandated

a life sentence. The First Step Act altered the statutory requirements for a qualifying offense[1], which reduced Petitioner's qualifying prior drug convictions to a single offense and reduced his mandatory minimum sentence from life to 15 years.

These favorable changes resulting from the First Step Act were addressed in detail in Petitioner's Presentence Report ("PSR"). The PSR noted that at the time of the entry of Petitioner's guilty plea he had two prior felony drug convictions which qualified as predicate drug offenses under § 851 but that changes resulting from the adoption of the First Step Act on December 21, 2018 reduced his predicate offense to a single 2014 conviction for Possession with the intention to Distribute Methamphetamine. The PSR then stated: *"[t]herefore, the defendant is facing a statutory minimum of 15 years to life, rather than a mandatory minimum term of life imprisonment.*" (Dkt. No. 232 at 5). (italics in the original). The statutory sentencing range of 15 years to life was also stated on the first page of Petitioner's PSR. (*Id*. at 1).

At Petitioner's sentencing hearing, immediately after being placed under oath, he affirmed to the Court that he had reviewed the PSR and consulted with his attorney, Naki Richardson-Bax, concerning the PSR. (Dkt. No. 280 at 2-3). The Court then addressed any objections of the Petitioner to the PSR. There was no objection to the factual summary in the PSR concerning Petitioner's 2014 PWID drug convictions, which stated he had imposed a "10 years concurrent sentence, credit for 424 days time served." (Dkt. No. 232 at 18).[2] The Court adopted the PSR as the "findings of fact for purposes of sentencing." (Dkt. No. 280 at 15).

---

[1] Under the former statute, a prior drug conviction that was punishable by incarceration of more than one year qualified as a predicate offense. Under the First Step Act, a prior drug conviction qualified as a predicate offense only if the defendant actually served a term of imprisonment of more than 12 months. 21 U.S.C. §§ 802(57)(A), 841(b)(1)(a).

[2] Petitioner was sentenced on December 18, 2014 for three separate drug offenses: "Trafficking in Methamphetamine," "Manufacture Methamphetamine," and "PWID/Distribution of Cocaine/LSD/Other Narcotic Drugs in Schedule 1 & 2." (Dkt. No. 232 at 18).

The Government moved at sentencing both for a downward departure for substantial assistance under Sentencing Guideline 5K1.1 and an upward departure under 5K2.1 for conduct leading to death. The Court granted the motion for a downward departure under 5K1.1 but denied the Government's motion for an upward departure under 5K2.1 because the guideline range of 235 to 293 months incarceration was sufficient to impose a reasonable sentence based upon the record before the Court. (*Id*. at 18, 35-36). Petitioner's guideline range included no enhancement for an offense leading to the death of another person. (Dkt. No. 232 at 22).[3] The Court sentenced Petitioner to 293 months of incarceration and 10 years of supervised release. (Dkt. No. 260). Petitioner's conviction and sentence were subsequently affirmed by the Fourth Circuit on September 16, 2020. *United States v. Lee*, 827 Fed. Appx. 274 (4th Cir. 2020). This petition for habeas relief for alleged ineffective assistance of counsel then followed.

**III.   Discussion**

Petitioner asserted six different claims in his habeas petition, several of which are overlapping and duplicative. The Court has addressed these claims below.

    **A.   Ground One:  Alleged ineffective assistance of counsel based on trial counsel not informing Petitioner that his count of conviction required a showing of "but for" and failing to challenge the "but for" element of Count 1.**

Petitioner pled guilty on October 23, 2018 to a single count, Conspiracy to Possess with Intent to Distribute and to Distribute 50 grams or more of Methamphetamine and 500 grams or more of a Mixture and Substance containing 100 grams or more of a Mixture and Substance

---

[3] The Court sustained a defense objection of a proposed enhancement for maintaining a premises for manufacturing or distributing a controlled substance. (Dkt. No. 280 at 13). Petitioner's only sentencing enhancement was a four level increase as an organizer or leader of a criminal activity involving five or more participants. (Dkt. No. 232 at 22).

5

Containing a Detectable Amount of Heroin. (Dkt. Nos. 118; 232 at 4).  Petitioner was represented at his guilty plea by William Thrower, who passed away prior to Petitioner's sentencing hearing. Attorney Naki Richardson-Bax was appointed Petitioner's counsel on January 24, 2019 and represented him at his sentencing hearing on October 16, 2019.

Petitioner is laboring under the misimpression that an element of his drug offense was that his criminal activity resulted in the death of another person.  Petitioner then argues that the Government was obligated to establish that "but for" his criminal activity the death would not have occurred and that his trial counsel was ineffective in failing to inform him of the "but for" element and to challenge such a finding.  (Dkt. No. 377-1 at 4-9).

Petitioner was not charged with any offense in which an element was the death of another person.  He received no sentencing enhancement relating to the death of another.  Thus, his trial counsel was not ineffective in failing to explain to him the "but for" element of his offense or to challenge the "but for" finding.  Petitioner's confusion about the "but for" element appears to arise from the fact that his PSR included details of the death of a 17-year-old man who overdosed on heroin Petitioner sold to the victim's mother.  This was part of relevant conduct that was appropriately included in the PSR. The uncontested record established that prior to the death of the young man, Petitioner was aware that another customer had overdosed on the same batch of heroin and Petitioner nonetheless sold the heroin to the victim's mother. (Dkt. No. 232 at 9).[4]

Petitioner's sentencing counsel, Ms. Richardson-Bax, sought to mitigate her client's role in the tragic death of the young man, noting he sold the drugs to the victim's mother, not directly to the victim, and was unaware that the heroin he sold was laced with fentanyl. (Dkt. No. 280 at

---

[4] In a separate prosecution, the Court sentenced the victim's mother to 144 months incarceration for her role in her son's death.  She had no prior criminal history.  C.A. No. 2:18-788-1, Dkt. Nos. 151 at 9; 183).

6

19-22). Counsel was well prepared and made the best of a very bad factual situation. In short, there was nothing about sentencing counsel's representation that remotely suggested that it fell outside a reasonable range of professional services or was in any way ineffective. The Court finds that Ground One has no merit.

      **B.**      **Grounds Two and Three: Alleged ineffective assistance of counsel by failing to inform Petitioner of the change in the law regarding the mandatory minimum sentence of life and to file a motion seeking to withdraw his guilty plea.**

Petitioner contends he was unaware of the change in the law that eliminated his mandatory life sentence and had he known that he would have sought to withdraw his guilty plea and gone to trial. (Dkt. No. 377-1 at 9, 11, 17). This assertion is contrary to the contemporaneous record, which establishes without question that Petitioner was fully aware prior to sentencing that he was not facing a mandatory life sentence. The PSR, which Petitioner stated under oath he had reviewed with his attorney, explicitly described the change in the law and that his mandatory minimum sentence was 15 years. (Dkt. No. 232 at 1, 5). Further, the Government moved and was granted a motion for downward departure based on substantial assistance under Sentencing Guideline 5K1.1, which eliminated any mandatory minimum sentence.[5] More telling, at sentencing, Petitioner implored the Court to impose a split sentence (part incarceration and part home incarceration) due to his Stage V chronic kidney disease. (Dkt. No. 280 at 22-28). This is wholly inconsistent with the present contention that he was unaware he no longer faced a mandatory minimum sentence of life in prison.

---

[5] Petitioner was informed by the Court at his guilty plea that any mandatory minimum sentence would be eliminated if the Government made and was granted a motion for a downward departure for substantial assistance. Petitioner confirmed to the Court he understood this. (Dkt. No. 279 at 15-16).

7

It is also notable that despite Petitioner's actual knowledge of the change in the law following his guilty plea, he made no effort to withdraw his guilty plea. Instead, he urged the Court to show mercy and to give him another chance. The present claim he would have withdrawn his guilty plea had he known about the change in the law appears to be an effort to get a "do over" after receiving a sentence that was higher than he expected.

The record before the Court establishes Petitioner's actual knowledge of the change in his sentencing guidelines arising from the adoption of the First Step Act, and there is no evidence to support the claim that sentencing counsel's performance fell below an objective standard of reasonableness. Petitioner informed the Court under oath that prior to the sentencing hearing his attorney had reviewed the PSR with him, which described in detail the changes in Petitioner's sentencing guidelines due to the adoption of the First Step Act. (Dkt. No. 232 at 5; 280 at 3). Sentencing counsel also confirmed to the Court that she had reviewed the PSR with Petitioner. (Dkt. No. 280 at 2).

Furthermore, there is no evidence to support Petitioner's claim that his sentencing counsel was ineffective in not moving to withdraw his guilty plea. First, there was no reasonable basis under the standards set forth in *United States v. Moore*, 931 F. 2d 245 (4th Cir. 1991), for Petitioner to have withdrawn his guilty plea. Second, Petitioner was fully aware that he was no longer facing a mandatory life term and made no effort to move to withdraw his guilty plea. Third, the withdrawal of the guilty plea would have potentially been highly prejudicial to Petitioner, if convicted, because he faced the prospect of losing acceptance of responsibility, which would have increased his sentencing guidelines from 235-293 months of incarceration to 324-405 months of incarceration. The Court finds there is no merit to Grounds Two and Three of Petitioner's habeas petition.

> **C.     Ground Four: Trial counsel were allegedly ineffective in not informing Petitioner about changes in 21 U.S.C. § 851 from the adoption of the First Step Act, challenging the existence of any qualifying predicate offenses under § 851, and insisting on a trial court inquiry to establish the presence of qualifying predicate offenses under § 851(b).**

Petitioner contends he was never informed about changes arising from the First Step Act regarding predicate offenses necessary for mandatory minimum sentences under his count of conviction, 21 U.S.C. § 841(b)(1)(A). At the time of Petitioner's guilty plea, any defendant charged with a § 841(b)(1)(A) violation who had two or more prior designated drug convictions punishable by more than 12 months incarceration faced a mandatory life sentence. Petitioner had at that time five such prior convictions. (Dkt. No. 87). With the adoption of the First Step Act, the standard was changed to include only prior "serious drug" felonies, which included convictions in which the defendant served more than 12 months of imprisonment. 21 U.S.C. § 802(57)(A). Petitioner has only one prior conviction that met that standard, a 2014 conviction in which Petitioner served 424 days. (Dkt. No. 232 at 18). With changes in the First Step Act, Petitioner's mandatory minimum sentence went from mandatory life to a mandatory minimum sentence of 15 years.

Petitioner's present claim of ignorance about these changes is plainly disproven by the record in this case. Petitioner's PSR explicitly detailed these changes and explained that he now faced a mandatory minimum sentence of 15 years. The PSR also identified the only predicate drug conviction that met the new statutory standard. (Dkt. No. 232 at 5). Petitioner and trial counsel confirmed to the Court at sentencing that they had reviewed the PSR together and there was no objection to the details relating to the 2014 conviction, including the fact Petitioner had served 424 days. (Dkt. Nos. 232 at 18; 280 at 2-3). The Court thereafter adopted the PSR as the findings of fact for purposes of sentencing. (Dkt. No. 280 at 15).

9

The record plainly establishes that Petitioner and his trial counsel reviewed the PSR prior to sentencing and Petitioner was fully aware of the beneficial changes he received from the adoption of the First Step Act. The designation of Petitioner's 2014 drug conviction as the sole qualifying predicate offense under § 841(b)(1)(A) and the consequential imposition of a mandatory minimum sentence of 15 years (as opposed to a mandatory life sentence) were thoroughly explained in the PSR. Petitioner made no objection to the portion of the PSR detailing his 2014 conviction, which established a factual basis for treating that conviction as a predicate offense for a § 851 enhancement.

The Court's confirmation of Petitioner's and his counsel's review of his PSR and the absence of any objection to the facts associated with his 2014 conviction were sufficient to establish affirmation of his prior conviction under § 851(b). The fact that trial counsel did not insist on a more extensive inquiry when the facts were undisputed would not constitute ineffective assistance of counsel and Petitioner suffered no prejudice from the absence of a more extensive inquiry.

The bottom line is that the record at sentencing fully established that Petitioner had one qualifying predicate offense arising from his 2014 conviction and that Petitioner was provided clear notice of the beneficial changes resulting from the adoption of the First Step Act prior to his sentencing hearing. There is simply no evidence to support a claim that trial counsel failed to meet an objective standard of competent performance or that Petitioner suffered any prejudice regarding the application of § 851 or any other aspect of counsel's representation of Petitioner. The Court finds Ground Four has no merit.

    **D.**    **Ground Five: Appellate counsel was allegedly ineffective in not raising on appeal issues in Grounds One, Two, Three, and Four of Petitioner's habeas petition.**

The Court has found that trial counsel was not ineffective regarding any of the claims asserted in Grounds One, Two, Three, or Four of Petitioner's petition. Consequently, there is no merit to the claim that appellate counsel was ineffective in not raising these issues on appeal.

    **E.**    **Ground Six: Petitioner asserts he is entitled to an evidentiary hearing**.

A prisoner bringing a petition for habeas relief under § 2255 is entitled to an evidentiary hearing unless "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 21 U.S.C. § 2255(b). It is well established that no hearing is required where the district judge responsible for considering the petition was extensively involved in the guilty plea and sentencing, is thoroughly familiar with the record, and "the record conclusively contradicts the allegations." *Ouellette v. United States*, 862 U.S. 371, 377 (1st Cir. 1988).

As set forth above, Petitioner's claims are contradicted by the record in this matter, which conclusively shows that Petitioner is not entitled to relief. Consequently, Petitioner's request for an evidentiary hearing in this matter is denied because it would add "little or nothing to the present extensive record." *Id*. at 378.

**III.**    <u>**Certificate of Appealability**</u>

28 U.S.C. § 2253 provides:

> (c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

A prisoner satisfies the standard by demonstrating that reasonable jurists would find the Court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S.

322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). The legal standard for the issuance of a certificate of appealability has not been met here because a reasonable jurist would not find it debatable that Petitioner failed to meet his burden of demonstrating that his counsel's performance fell below an objective standard of reasonableness and that his sentence would have been different but for any such insufficient performance.

### IV.    Conclusion

For the foregoing reasons, Respondent's motion for summary judgment (Dkt. No. 384) is **GRANTED** and Petitioner's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Dkt. No. 377) is **DENIED**.

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

April 25, 2022
Charleston, South Carolina